**Gloria DIXON, Plaintiff,**

v.

**John H. DALTON, Secretary of the Navy, Defendant.**

**No. CIV. A. 97–6918.**

United States District Court,
E.D. Pennsylvania.

Dec. 19, 1997.

Rosemarie Rhodes, Harper & Paul, Philadelphia, PA, for Plaintiff.

Stephen J. Britt, United States Attorney's Office, Philadelphia, PA, for Defendant.

## ORDER

KATZ, District Judge.

**AND NOW,** this 19th day of December, 1997, after consideration of defendant's Motion for Summary Judgment, and the response and the reply thereto, it is hereby **ORDERED** that said motion is **GRANTED.**

## MEMORANDUM

Defendant's sole argument for summary judgment is that plaintiff failed to exhaust her administrative remedies before filing the present suit, in that she did not timely file an EEO complaint within 45 days as required by 29 C.F.R. § 1614.105(a)(1). Plaintiff responds that the filing requirement should be equitably tolled.

## FACTS

This case concerns a question of the administration of a Defense Department program called the Priority Placement Program (the PPP). The PPP program provides a mechanism for reassigning civilian employees of the Department who are laid off by giving them priority consideration for job vacancies in other Department facilities. The Department assigns coordinators to maintain lists of eligible laid-off employees, and when a defense agency has a job vacancy, it must consult the appropriate coordinator to determine if any eligible displaced workers are available to fill the job.

Plaintiff Gloria Dixon is an African–American and was an employee at the Philadelphia Naval Shipyard. Her job from November, 1992 until her termination when the base closed in September, 1995 was as the Priority Placement Program Coordinator at the shipyard. Her duties were to administer the PPP program.[1] Plaintiff registered in the program on May 3, 1995, during an early registration period. She limited her registration to her then-series and grade, and limited her area of consideration to two Department of Defense facilities. On May 15, 1995, plaintiff received a Reduction–in–Force notice that included a notice that all employees must register during the mandatory PPP registration period. An employee who was mandatorily registered would be listed for any vacancies within the employee's "commuting area" and as many as three grade-levels below the employee's then-current grade. Plaintiff registered on that date in accordance with the mandatory registration requirements. During April, 1995 Patricia D'Amico, plaintiff's supervisor, told plaintiff that she would assume the responsibility of making certain that the employees who registered during the early registration phase would be brought into compliance with the mandatory registration requirements. Pl. Aff. ¶ 3. Plaintiff was not placed into a new

position through the PPP program, and other employees with less seniority were placed into job vacancies for which plaintiff was qualified and registered. Plaintiff's last day of work was September 15, 1995.

On December 10, 1996, plaintiff contacted the EEO Office by letter. She filed a complaint on February 10, 1997, stating that she had been discriminated against because of race, color, and reprisal. She alleged that "[o]n or about October 30, 1996 I became aware that I was denied an offer of employment due to Patricia D'Amico and John Conwell limiting my employment opportunities by not expanding my area of consideration in PPP." This awareness apparently was gained after hearing Patricia D'Amico testify for the Navy at the trial of another set of employment discrimination claims brought by plaintiff. Dixon's complaint stated that the date on which the alleged discrimination took place was September 15, 1995. The EEO Office dismissed plaintiff's complaint as untimely, because she "did not contact the EEO Office within 45 days of 15 September 1995, the date of your separation and the final date that you would have known that the area of consideration in PPP that you requested was not changed during mandatory registration." Plaintiff filed this suit, alleging that defendant, by failing to select her for positions within her registration while selecting persons with less seniority and no pending EEO complaints, discriminated against her on account of her race and in reprisal for filing EEO complaints in the past.

## DISCUSSION

Under 29 C.F.R. § 1614.105(a)(1), an aggrieved federal employee is required to "initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." As the EEO Office pointed out in its letter dismissing plaintiff's complaint to

---

1. Plaintiff's affidavit states that as PPP Coordinator, she had no responsibility for making certain that any employee who had registered under the early registration phase was properly reregistered under the mandatory phase of the registration period. Otherwise, plaintiff's papers do not specify what her duties were. On this point, as

with all other facts and inferences drawn from them, the court for the purposes of a summary judgment motion views the facts in the light most favorable to the plaintiff. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

them as untimely, plaintiff's initial contact with the Office with regard to this matter was 451 days after her last day of work.

Plaintiff argues that her EEO contact was timely, because it was within 45 days of October 30, 1996, the day she heard the testimony of Patricia D'Amico in which Ms. D'Amico stated that plaintiff had not been registered in the mandatory registration phase. Plaintiff's argument could be construed to be based on the application of either the discovery rule or equitable tolling, so the court will consider the application of each of these doctrines in turn.

*The Discovery Rule*

■ For purposes of the discovery rule, plaintiff discovered her injury at the latest on September 15, 1995 (her last day of work), because that is when she became aware of the actual injury. "A claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1386 (3d Cir.1994). As the court explained in *Oshiver,* the plaintiff, who was claiming discriminatory discharge, discovered her injury on date of discharge because she "became aware (1) that she had been injured, i.e., discharged, and (2) that this injury had been caused by another party's conduct. That [plaintiff] may have been deceived regarding the underlying motive behind her discharge is irrelevant for purposes of the discovery rule." *Id.* at 1391. Likewise in the present case, on Ms. Dixon's last day of work, she was aware that she had not been placed in a new job through the PPP program and that this injury had been caused by another party's conduct. This is all that is required under the standard set forth in *Oshiver.* In addition to this bare minimum, plaintiff had the awareness that other employees with lesser seniority and no EEO complaints had been placed. Therefore she was aware of her actual injury; and because her injury was discovered on that date, plaintiff's claim accrued on that date.

*Equitable Tolling*

■ The forty-five day period in 29 C.F.R. § 1614.105(a)(1) is subject to equitable tolling, which functions to stop the limitations period from running where the claim has accrued. *See Hart v. J.T. Baker Chemical Co.,* 598 F.2d 829, 831 (3d Cir.1979) (the time limitations in Title VII are not jurisdictional; rather, they are analogous to a statute of limitations and thus subject to equitable modifications such as tolling); *Oshiver* at 1387 (stating the function of equitable tolling). The Third Circuit has explained that "there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver* at 1387 (citations omitted). The first of these situations, the only one relevant in the present case, is premised on the fundamental principle that a defendant should not be permitted to profit from its own wrongdoing after lulling the plaintiff into inaction. *See Oshiver* at 1388–89.

In the particular context of employment discrimination cases, the Third Circuit has held that "the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision." *Oshiver* at 1387 (citing *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 308–09 (3d Cir.1983)). The court fully articulated the rule this way:

"where the plaintiff has been actively misled regarding the reason for his or her discharge, the equitable tolling doctrine provides the plaintiff with the full statutory limitations period, starting from the date the facts supporting the plaintiff's cause of action either become apparent to the plaintiff or should have become apparent to a person in the plaintiff's position with a reasonably prudent regard for his or her rights."

*Oshiver* at 1389 (adopting the rule set forth in *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975)).

In *Oshiver*, the plaintiff's employer actively misled the employee about the reasons for discharge by telling her a false reason for her discharge. Plaintiff's employer law firm told her that there was not enough work for the firm to continue to employ her, when apparently there was, because the firm hired a male lawyer shortly thereafter. *See Oshiver* at 1384. In this case, there was no such affirmative misrepresentation made to plaintiff about the reason she was not selected through the PPP program. The statement that plaintiff relies on as the basis for an allegation of deception which was then uncovered in D'Amico's October, 1996 testimony is that D'Amico allegedly told the plaintiff that she (D'Amico) would oversee the applications of employees who had registered during the early registration phase to make sure that their registration status was broadened to what it was required to be under mandatory registration. D'Amico's statement, though, does not trigger the application of equitable tolling. It was not made after plaintiff's claim accrued as a way to deceive plaintiff about the circumstances and lull her into inaction. D'Amico made that statement in April, 1995, after which time plaintiff registered in both the early and mandatory phases. Therefore, plaintiff meets neither of the requirements of the test in *Oshiver* set forth above: the defendant did not actively mislead her, and even if there was a misrepresentation, plaintiff did not rely on it in any way that caused her noncompliance with the statutory limitations period.

This motion is not being granted on the grounds of defendant's argument that at trial in a prior case between these same two parties, another judge of this court found plaintiff's testimony with regard to a similar argument to tax credibility. The court declines to rely on that credibility determination to prejudge the issue in this case: the facts in this case are different than those involved in the earlier case. Making a credibility determination is a job of the jury at trial, not of the judge on a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Big Apple BMW, Inc. v. BMW of N. Amer., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). As discussed above, though, plaintiff's argument in support of the application of the discovery rule or the equitable tolling doctrine fails on grounds other than her credibility.